IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RANDOLPH M. GREER,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 20-00972-JMC |
| **TRINITY FINANCIAL SERVICES, LLC,** | * | |
| Defendant. | * | |

* * * * * * * *

## MEMORANDUM OPINION

Plaintiff Randolph Greer brings this debt collection action against his mortgage servicer, Defendant Trinity Financial Services, LLC ("Defendant" or "Trinity"), for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and related state law claims. (ECF No. 48). Presently before the Court is Defendant's Motion for Partial Summary Judgment (ECF No. 77) which seeks summary judgment on Plaintiff's federal law claim, and corresponding dismissal of the state law claims for lack of jurisdiction. The Court has reviewed the briefings (ECF Nos. 77, 78, 79, 81, 82) and deems no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Defendant's Motion for Partial Summary Judgment is GRANTED, and Plaintiff's remaining state law claims are DISMISSED for lack of jurisdiction.

**I.   BACKGROUND**

Plaintiff obtained title of real property located in Baltimore, Maryland, on June 3, 1993. (ECF No. 48, Ex. 2). The deed for this property was recorded in the Circuit Court for Baltimore City. *Id.* On May 2, 2007, Plaintiff obtained an equity-line mortgage loan on his property in the amount of $148,000 and executed a deed of trust in favor of PNC Bank, National Association ("PNC") on June 9, 2007, which was recorded shortly thereafter in the Circuit Court for Baltimore City. (ECF No. 79, Ex. 3). In the agreement between Plaintiff and PNC, provision 36 expressly

allowed PNC to assign its rights under the agreement at any time without Plaintiff's consent. (ECF No. 79, Ex. 3 at 6). The agreement stated that the person to whom PNC assigned the agreement would be entitled to all of the rights under the agreement. *Id.*

At some point between 2007 and 2018, PNC assigned its rights and interests in the loan to US Mortgage Resolution, LLC ("US Mortgage"), as evidenced by an undated allonge to the original loan documents. (ECF No. 79, Ex. 3 at 7). US Mortgage sold its ownership interests to Trinity on July 30, 2018, which was memorialized in a loan purchase agreement ("Purchase Contract"). (ECF No. 79, Ex. 1). On October 2, 2018, PNC assigned its deed of trust to US Mortgage, and subsequently filed that assignment in the Circuit Court for Baltimore City on October 23, 2018. (ECF No. 48, Ex. 4).

A "Notice of Sale of Ownership of Mortgage Loan", addressed to Plaintiff and dated May 28, 2019, explained that Trinity was the new creditor of Plaintiff's loan as of July 30, 2018. (ECF No. 79, Ex. 2). Land Home Financial Services serviced the loan on Trinity's behalf until August 31, 2019. (ECF No. 77, Ex. 3 at 5). On that same date, Trinity became both the servicer and holder (owner) of the loan. *Id.*

Plaintiff was in default of his loan and received an "Acceleration Warning" letter dated October 9, 2019, from Brock & Scott PLLC advising Plaintiff that Brock & Scott had received a foreclosure referral from Trinity. (ECF No. 48, Ex. 5). That letter stated that Plaintiff could cure the default by paying the past due amount to Trinity. *Id.* In another letter with that same date, Brock & Scott informed Plaintiff of the total amount due to Trinity. (ECF No. 48, Ex. 6).

On January 21, 2020, PNC executed a "Corrective Assignment of Deed of Trust" ("Lost Note") assigning interest in the deed to US Mortgage. (ECF No. 48, Ex. 11). Subsequently, on April 21, 2020, US Mortgage assigned its rights in the deed to Trinity. (ECF No. 48, Ex. 12).

Plaintiff brought suit against Trinity in this Court on April 15, 2020, and has since amended his Complaint. (ECF Nos. 1, 48). Plaintiff's Amended Complaint alleges Trinity violated the FDCPA and related state statutes. (ECF No. 48). Plaintiff asserts that, through sending the October 9, 2019, letters, Trinity attempted to collect a debt that it was not legally permitted to collect because Trinity did not possess the assignment of the deed of trust for the loan. (ECF No. 48). This Court holds subject-matter jurisdiction over Plaintiff's federal law claim, and supplemental jurisdiction over the related state law claims. 28 U.S.C. §§ 1331, 1367.

Defendant filed the instant Motion for Partial Summary Judgment (ECF No. 77) seeking summary judgment as to Plaintiff's federal law claim, and dismissal of Plaintiff's state law claims for lack of jurisdiction. Defendant argues that it is not subject to the provisions of the FDCPA for attempting to collect a debt that it owned. (ECF No. 77). Trinity's main argument is that it owned Plaintiff's loan at the date of execution of the loan purchase agreement with US Mortgage. *Id.* Importantly, Trinity argues that it did not need to have possession of the assignment of deed of trust, or a lost note affidavit in place of the deed, to exercise its ownership right in accelerating Plaintiff's loan. (ECF Nos. 77, 79). Plaintiff argues that because Defendant did not have physical possession of the "Lost Note" at the time the letters of acceleration and foreclosure were sent, Defendant was not the lawful owner of the loan and therefore violated various laws. (ECF No. 78).

As explained more fully below, the Court concludes that possession of the note was not required for Defendant to exercise its ownership rights in the loan. As such, Trinity's ownership rights became effective on the date of the loan purchase agreement with US Mortgage. Because of this, at the time Plaintiff received letters from Brock & Scott, Trinity was the owner of the loan, and is therefore not subject to the provisions of the FDCPA. Accordingly, Defendant is granted summary judgment as to the federal law claim. Additionally, this Court declines to continue to

exercise supplemental jurisdiction over the state law claims given the judgment against Plaintiff in the anchoring federal law claim. Consequently, the remainder of Plaintiff's Amended Complaint is dismissed for lack of jurisdiction. Ultimately, and for the reasons explained more fully below, Defendant's Motion for Partial Summary Judgment is GRANTED.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

III.    ANALYSIS

    a. **Debt Collector under the FDCPA**

The FDCPA aims "to eliminate abusive debt collection practices by debt collectors" through various regulations that set forth the appropriate means by which a debt collector may collect debt. 15 U.S.C. § 1692. The statutory scheme also enumerates those acts which are expressly prohibited. *Id.* In determining whether the FDCPA has been violated, the following elements must be proven: "(1) [a] [plaintiff] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Webber v. Maryland*, 2017 WL 86015, at *4 (D. Md. Jan. 10, 2017).

Here, the central argument and threshold determination in assessing a potential FDCPA violation is whether Trinity is properly categorized as a "debt collector" under the statute. *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 140 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) ("when a plaintiff claims that a defendant violated § 1692e (prohibiting a 'debt collector' from using 'any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt'), he must prove that the defendant was acting as a debt collector, as defined by § 1692a(6), when it engaged in misrepresentations in connection with the collection of debt from the plaintiff").

The FDCPA "defines a debt collector as (1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." *Id.* (explaining 15 U.S.C. § 1692a(6)). Importantly, and by definition, a creditor is not a debt collector. *Henson*, 817 F.3d at 136. "The material distinction between a debt collector and a creditor … is therefore whether a

person's regular collection activity is only for itself (a creditor) or whether it regularly collects for others (a debt collector)." *Id.* at 136-37. Simply put, if Trinity was a creditor of Plaintiff's equity-line mortgage loan, then Trinity is not a debt collector and therefore did not violate the FDCPA.

Provision 40 in the loan agreement between Plaintiff and PNC, executed in May 2007, states that "matters relating to the enforcement of the obligations stated in this Agreement and matters relating to the granting, perfection and enforcement of the security interest securing this agreement shall be governed by the laws of the state where enforcement, granting or perfection takes place." (ECF No. 79, Ex. 3 at 6). Because the act of collecting debt owed on the loan relates to the enforcement of obligations, and the deed of trust was recorded in Maryland, Maryland law applies in determining whether Trinity qualifies as a "creditor" for purposes of the loan.

### i. Creditor under Maryland Law

"The Maryland Code, Commercial Law Article governs a negotiable promissory note that is secured by a deed of trust." *Anderson v. Burson*, 424 Md. 232, 246 (2011). Title 3 of the Maryland Commercial Law Article provides the framework for enforcement of these types of loans (negotiable instruments). Md. Code Ann., Com. Law § 3-301 (West 2022). "A party seeking to enforce a note must produce proof of its right 'when the matter is put at issue properly.'" *Jones v. Ward*, 254 Md. App. 126, 140, 270 A.3d 1024, 1032 (2022), *cert. denied*, No. 20, Sept. Term, 2022, 2022 WL 2030042 (Md. May 27, 2022) (quoting *Anderson*, 424 Md. at 246). A person entitled to enforce "an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418(d)." *Id.* Under § 3-309:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when

> loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Relevant to § 3-309(a)(i), the Court of Special Appeals of Maryland has held that "an assignee may enforce a lost note under § 3-309 even if the note was lost prior to its assignment." *Jones*, 254 Md. App. at 140. Where an assignee satisfies the elements of § 3-309(a), the party must also prove the terms of the instrument and their right to enforcement. § 3-309(b). If the assignor had the right to enforce the lost note when it was lost, and the assignee can provide sufficient evidence of the assignment of rights, that assignor can be found as the lawful owner of the note. *Jones*, 254 Md. App. at 152.

In *Jones*, the Plaintiff obtained a loan from a bank ("bank 1") in 2004 which was executed by a note and deed of trust secured by her real property. *Jones*, 254 Md. App. at 131. The note included a provision that the Plaintiff would pay the loan to bank 1 and its successors, assignees, or transferees. *Id.* Ten years later, bank 1 signed a lost note affidavit. Bank 1 was then acquired by "bank 2", which was then acquired by "bank 3", who ultimately "came to own the [n]ote." *Id.* at 132. Plaintiff entered into an agreement to modify the loan with bank 3 that same year. *Id.* Two years later, in 2016, bank 3 executed a lost note affidavit. *Id.* Months later, bank 3 executed another lost note affidavit in contemplation of a sale, then a year later executed yet another lost note affidavit. *Jones*, 254 Md. App. at 132. Ultimately, bank 3 transferred its ownership of the note to "creditor 1", and transferred the servicing rights to "management 1." *Id.* A year later, in 2017, creditor 1 transferred its ownership rights to "creditor 2." *Id.* During this time, Plaintiff had defaulted on her loan in early 2016. *Id.* In 2018, creditor 2, acting through a trustee, sent Plaintiff a notice of intent to foreclose, and in 2019, the trustee initiated foreclosure proceedings in court.

7

*Id.* at 133. Plaintiff argued that creditor 2 was not the owner of the note and therefore could not enforce the loan through its trustee. *Jones*, 254 Md. App. at 133.

The *Jones* court engaged in statutory interpretation, and evaluated case law history and comments to both the UCC and the Maryland's state equivalent. *Jones*, 254 Md. App. at 140-44. The court found that a fair reading of § 3-309 allows a lawful holder of a lost note to assign the rights under it. *Id.* at 146-47. Once it is determined that the original holder "was entitled to enforce the note when it lost possession," what must be proven next is that "there was a valid assignment to each subsequent purchaser from the prior owner." *Id.* at 147. The court reasoned that to hold otherwise would "confer a windfall on debtors where a lost or destroyed note was purchased." *Id.* at 146. Ultimately, the *Jones* court found that, when proving enforcement rights under § 3-309 pursuant to § 3-301(iii), the party asserting rights must prove that the originating party had the right to enforce the note when it was lost, and that successive assignees/assignors had that same right. *Id.* at 150. In essence, the asserting party must show that each chain of assignment was valid, and that the borrower is protected from multiple competing claims where a note is lost. *Id.* at 140, 151.

Defendant's instant Motion argues that Trinity "became the owner of the Plaintiff's mortgage loan on the effective date of the Loan Purchase Agreement that it entered into with [US Mortgage]" on July 30, 2018. (ECF No. 79). Plaintiff retorts that, at the earliest, Defendant became the creditor of the loan when PNC signed a "Corrective Assignment of Deed of Trust" to US Mortgage on January 21, 2020. (ECF No. 78). Thus, the parties disagree about the requirements to enforce the obligations under the loan, particularly whether possession of the Lost Note Affidavit is required. This disagreement consequently results in differing timelines for enforcement of the loan.

Though initially overlooked by the parties, and as explained above, case law and the Maryland Code aptly resolve this dispute. Under § 3-301(iii), a person not in possession of the instrument (deed of trust), "is entitled to enforce the instrument pursuant to § 3-309." As explained by the Court of Special Appeals, an assignee may enforce a lost note "even if the note was lost prior to its assignment." *Jones*, 254 Md. App. at 140. Here, PNC, the original and lawful note holder, lost the note prior to its assignment to Trinity as ultimately verified in PNC's Lost Note Affidavit, and could have enforced it prior to its loss. The loss of possession was not a result of Trinity's transfer or otherwise a lawful seizure (§ 3-309(a)(ii)) and it is apparent from exhibits and the history of transfers that the whereabouts of the note simply could not be determined at the time that Plaintiff received the letters at issue (§ 3-309(a)(iii)). Therefore, Trinity satisfies § 3-309(a).

Turning to § 3-309(b), Trinity must also provide sufficient evidence of the transfer to prove ownership rights. The chain of assignments and transfer of ownership is not in dispute: Plaintiff contracted with PNC for a loan (ECF No. 79, Ex. 3); PNC sold its ownership rights to US Mortgage (ECF No. 79, Ex. 3 at 7); US Mortgage sold its ownership rights to Trinity (ECF No. 79, Ex. 1). (ECF No. 82 at 2) (Plaintiff "is not seeking protection from the possibility of being obligated to two persons or entities with conflicting claims").

Plaintiff does not dispute the chain of assignments, but instead, for the first time, asserts negligence on behalf of the creditors and "merely is asking this court to consider the legal consequence of the time delay, and sequence of events that lead to Trinity finally acquiring standing." (ECF No. 82). Despite an Order from the Court (ECF No. 80) directing the parties to provide supplementation given the ruling in *Jones*, Plaintiff maintains that Trinity must have possession of the Lost Note Affidavit to enforce its rights, arguing there otherwise would be no purpose to lost note affidavits generally. *Id.*

Foremost, Plaintiff's timing argument does not align with application of § 3-309 or the holding in *Jones*. The Court of Special Appeals' decision in *Jones* explains that possession is not a requirement — upon proving the other statutory elements as explain above — for enforcement of an agreement where the assignor had a right to enforce when the loss occurred, and when the rights were otherwise properly assigned. The Court shares in Defendant's interpretation that *Jones* "has no requirement of, and does not mention, delivery of lost-note documents in order for an assignment to be valid." (ECF No. 81 at 2).

Second, and markedly, Plaintiff concedes that possession of the note is not required to prove ownership. (ECF No. 78 at 2). Plaintiff states that "Trinity could not assert ownership until at a minimum January 17, 2020." *Id.* January 17, 2020, is the date when PNC executed and endorsed the Lost Note in favor of US Mortgage. (ECF No. 48, Ex. 11). Through arguing that Trinity could assert ownership when US Mortgage "possessed" the Note, Plaintiff in effect acknowledges that actual possession is not necessary for Trinity to exercise its ownership rights. Instead, Plaintiff correctly understands that Defendant itself did not need to possess the note, but rather the assignor needed to have rights in assigning said note.

Lastly, Plaintiff's statement that lost note affidavits would generally have no purpose if not to require possession, though persuasive, invites a host of other theoretical arguments. An inversely related argument could be made that when a note is lost, the responsibilities under the agreement are not suddenly unenforceable; the obligations under that agreement are not "lost" as well. Thus, Plaintiff's arguments fails here too.

Plaintiff's suit can be understood as an avenue to evade obligations under his loan; the very scenario that *Jones* had the foresight to preclude. 254 Md. App. at 146 ("the result would confer a windfall on debtors where a lost or destroyed note was purchased"). Ultimately, the Court agrees with Defendant that "[b]ecause the assignment of the Plaintiff's mortgage loan from PNC to U.S.

Mortgage Resolution, LLC, and from U.S. Mortgage Resolution, LLC to Trinity, occurred in 2018, and were effective when made, Trinity became the holder of the Plaintiff's Note on July 30, 2018." (ECF No. 81).

Having determined that Trinity obtained the rights in enforcing the provisions included in Plaintiff's equity-line mortgage loan at the time that Plaintiff received the acceleration and foreclosure letters, Trinity is properly characterized as a creditor. As a creditor, Trinity has not violated the FDCPA and is entitled to judgment as a matter of law. Therefore, Defendant's Motion for Partial Summary Judgment as to Plaintiff's claim under the FDCPA is therefore GRANTED in Defendant's favor.

### b. Supplemental Jurisdiction

Because judgment in Plaintiff's federal law claim has been entered in favor of Defendant, the Court must determine whether to continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Under 28 U.S.C. §§ 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims if the court has "dismissed all claims over which it has original jurisdiction." The Fourth Circuit has emphasized that "courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

The Court considers the extinguishment of Plaintiff's anchoring federal law claim to be of paramount importance in determining whether to retain jurisdiction over Plaintiff's remaining state law claims. The current conditions of judicial economy favor a halt in supplemental jurisdiction over a case in which federal law has no role. As such, the Court exercises its discretion and declines

to maintain supplemental jurisdiction over Plaintiff's state law claims. Consequently, the remainder of Plaintiff's case is DISMISSED.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Partial Summary Judgment (ECF No. 77) is GRANTED, and Plaintiff's remaining claims are DISMISSED for lack of jurisdiction. A separate Order follows.

<u>June 14, 2022</u>                                              <u>                /s/                </u>
Date                                                                      J. Mark Coulson
                                                                              United States Magistrate Judge